MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2020 ME 143
Docket:        Ken-19-364
Submitted
 On Briefs:   September 29, 2020
Decided:       December 29, 2020

Panel:         MEAD, GORMAN, JABAR, HUMPHREY, HORTON, and CONNORS, JJ.

## STATE OF MAINE

v.

## JAHNEIRO PLUMMER

CONNORS, J.

[¶1]  This appeal addresses the treatment of the defendant's motive for his crime when imposing his sentence.  Jahneiro Plummer appeals his sentence imposed by the trial court (Kennebec County, *Stanfill, J.*) after he was convicted by a jury of two counts of aggravated trafficking in scheduled drugs (Class A), 17-A M.R.S. § 1105-A(1)(D), (H) (2020), and one count of criminal forfeiture, 15 M.R.S. § 5826 (2020).  He asserts that the trial court improperly double counted the commercial purpose of his offenses when it conducted its sentencing analysis pursuant to 17-A M.R.S. § 1252-C (2018).[1]  Because we

---

[1] Title 17-A M.R.S. § 1252-C (2018) has recently been amended and reallocated as part of the recodification and revision to Title 17-A's sentencing provisions.  *See* P.L. 2019, ch. 113, §§ A-1 to -2 (emergency, effective May 16, 2019) (codified at 17-A M.R.S. § 1602(1) (2020)).  All citations to the

2

conclude that the trial court properly considered different aspects of the commercial nature of the offense at each step of its analysis, we affirm.

## I. BACKGROUND

[¶2] In November 2018, Plummer was indicted on two counts of aggravated trafficking in scheduled drugs (Class A), 17-A M.R.S. § 1105-A(1)(D), (H), and one count of criminal forfeiture, 15 M.R.S. § 5826. He pleaded not guilty, and three months later, the trial court held a two-day jury trial. The jury found Plummer guilty on all counts.

[¶3] In the subsequent sentencing proceeding, the court first considered the appropriate basic sentence pursuant to 17-A M.R.S. § 1252-C(1):

> The first step of that analysis is to consider the basic sentence that should apply having in mind the particular characteristics of the crime and the manner in which it was committed.
>
> In this case, Mr. Plummer has been convicted of aggravated trafficking, a Class A offense, both in heroin and in cocaine base. In both cases, the quantity of the drugs far exceeds the amount that the [L]egislature has set as the amount from which one would presume trafficking.
>
> And indeed, the quantity of drugs involved in this case is very large. These are not victimless crimes. On a daily basis as a judge, I see the effects of the amount of cocaine base and the amount of heroin in this community and it is devastating this community.

---

sentencing statutes are to the statutes in effect at the time of the offense. *See State v. Sweeney*, 2019 ME 164, ¶ 8 n. 2, 221 A.3d 130.

Children are being left without parents, parents without children, and families are being ripped apart. It is not a victimless crime.

There is a large sum of money involved as well. And it—as—by the facts of the case and the manner of which it was committed, it appeared to be a purely commercial operation with planning involved as Mr. Plummer had traveled here from New York.

Having all of that in mind, the Court does find, together with the goals as articulated in our statute, that the basic sentence is significant. The goals include setting a basic sentence that would have deterrent effect, restraining a person in the interest of public safety.

The court set the basic sentence at eighteen years.

[¶4] Moving to the second step of the statutorily required sentencing analysis, the court analyzed aggravating and mitigating factors. 17-A M.R.S. § 1252-C(2). With respect to aggravating factors, the court stated:

The aggravating factors in this case include, as already indicated, that it was a purely profit or selfish mode would—in other words, there's no evidence of addiction in this case. The fact that he came from out of the community for the sole purpose of selling drugs and in . . . a commercial motive. Mr. Plummer's trial testimony lacked credibility in his testimony. And those are all the kinds of factors that the Court can consider as aggravating factors.

[¶5] During the sentencing hearing, the court then described the mitigating factors, including Plummer's lack of criminal history, his family support, his volunteer work while in pretrial detention, the lack of firearms or violence associated with the trafficking, and his acceptance of the verdict. *See*

4

17-A M.R.S. § 1252-C(2). Because the mitigating factors "outweigh[ed] the aggravating factors," the court reduced Plummer's sentence from eighteen to fifteen years.

[¶6] In the final step of the sentencing analysis, the court sentenced Plummer to fifteen years of imprisonment with all but six years suspended and four years of probation. *See* 17-A M.R.S. § 1252-C(3).

[¶7] Plummer timely but unsuccessfully appealed the judgment of conviction. *See State v. Plummer*, 2020 ME 106, 238 A.3d 241. He also filed an application to seek sentence review, *see* M.R. App. P. 20(a)(1), which the Sentence Review Panel granted, *State v. Plummer*, No. SRP-19-376 (Me. Sent. Rev. Panel Oct. 11, 2019), and which we now address separately. 15 M.R.S. § 2151 (2020); M.R. App. P. 20.

## II. DISCUSSION

[¶8] Pursuant to 17-A M.R.S. § 1252-C, which codified our decision in *State v. Hewey*, 622 A.2d 1151, 1154-55 (Me. 1993), a court imposing a sentence follows a three-step process. In the first step, the court determines the "basic term of imprisonment by considering the particular nature and seriousness of the offense as committed by the offender." 17-A M.R.S. § 1252-C(1). In the second step, the court determines the maximum period of imprisonment to be

imposed, "considering all other relevant sentencing factors, both aggravating and mitigating, appropriate to that case." 17-A M.R.S. § 1252-C(2). "These sentencing factors include, but are not limited to, the character of the offender and the offender's criminal history, the effect of the offense on the victim and the protection of the public interest." *Id.* At the last step, the court determines "what portion, if any, of the maximum period of imprisonment should be suspended." 17-A M.R.S. § 1252-C(3).

[¶9] Plummer argues that the court erred when it considered the commercial motive of his offenses both when setting the basic sentence and when setting the maximum sentence and thus improperly engaged in "double counting." *See* 17-A M.R.S. § 1252-C(2) ("The court shall . . . determine the maximum term of imprisonment to be imposed by considering all *other* relevant sentencing factors, both aggravating and mitigating . . . .") (emphasis added).

A. Standard of Review

[¶10] The threshold issue we must address is our standard of review of the sentencing court's decision. We have stated that we review the sentencing court's "determination of the basic sentence de novo for misapplication of legal principles and its determination of the maximum sentence for abuse of

discretion." *State v. Sweeney*, 2019 ME 164, ¶ 17, 221 A.3d 130 (quotation marks omitted). More precisely:

> We review de novo for misapplication of principle the basic sentence imposed at the first step of the analysis, and we review the maximum sentence and the final sentence determined at steps two and three for an abuse of discretion. We review the sentencing court's analysis at each step to determine "whether [it] disregarded the relevant sentencing factors or abused its sentencing power."

*State v. Hansen*, 2020 ME 43, ¶ 27, 228 A.3d 1082 (quoting *State v. Stanislaw*, 2013 ME 43, ¶ 17, 65 A.3d 1242).

[¶11] By its nature, a double-counting claim relates to multiple steps of the sentencing analysis. More pertinently, the claim poses the question of whether the sentencing court misapplied a legal principle. We therefore review a double-counting claim de novo. *Cf. United States v. Dudley,* 463 F.3d 1221, 1226 (11th Cir. 2006) ("We review *de novo* a claim of double counting."); *United States v. Fiume*, 708 F.3d 59, 61 (1st Cir. 2013) (reviewing a double-counting claim de novo).

B.    Plummer's Claim

[¶12] A survey of our precedent shows that sometimes motive or purpose is considered at the first step and sometimes at the second step of the *Hewey* analysis. *See, e.g., Hansen*, 2020 ME 43, ¶ 31, 228 A.3d 1082 (considering "motivation or reason for engaging in the criminal conduct" at the second step);

*State v. Nichols*, 2013 ME 71, ¶ 27, 72 A.3d 503 (holding that the court may consider "the defendant's motive" in deciding the continuum of the seriousness of murder at the first step (quoting *State v. Cookson*, 2003 ME 136, ¶ 38, 837 A.2d 101)); *State v. Burns*, 2011 ME 92, ¶ 13, 26 A.3d 817 (addressing the motive of greed at the first step); *State v. Downs*, 2009 ME 3, ¶ 20, 962 A.2d 950 (discussing at step one the motive to reoffend against the same victim); *State v. Basu*, 2005 ME 74, ¶ 25, 875 A.2d 686 (considering at step one that the defendant "acted in a premeditated manner and for pecuniary gain").

[¶13]  This apparent blurring between the two steps is a product of the multifaceted nature of motivation.  In step one, the court reviews factors relevant to the objective nature of the crime, while at the second step, it considers factors "peculiar to [the individual] offender."  *Hewey*, 622 A.2d at 1154.  "Motive" does not fit exclusively into either of these categories.  Generally, the premeditation and planning involved in committing a crime is analyzed as an objective characteristic of the crime at the first step, *see Basu*, 2005 ME 74, ¶ 25, 875 A.2d 686, while the individual circumstances of the particular offender, such as whether the crime was a product of the individual's drug addiction, is weighed at the second step, *see State v. Lilley*, 624 A.2d 935,

936-37 (Me. 1993). But the critical point for the purpose of reviewing a double-counting claim is that the same factor not be considered at both steps.

[¶14] Importantly, the same *fact* can generate multiple *factors*. A sentencing court may consider the same facts at steps one and two of its sentencing analysis, provided that it does so for different purposes. *See State v. Lord*, 2019 ME 82, ¶ 32, 208 A.3d 781 ("[B]ecause the facts surrounding a conviction for murder do not sort neatly into separately identifiable characteristics, there will inevitably be times when an 'aggravating' . . . circumstance will be considered in both the imposition of a life sentence in step one of a murder sentencing analysis and as an aggravating factor that must be addressed in step two."); *State v. Gray*, 2006 ME 29, ¶ 13, 893 A.2d 611 (the sentencing court may "refer to the same facts in the various steps of the sentencing analysis so long as the court is weighing different considerations at each step" (quotation marks omitted)).

[¶15] Applying these principles to the matter before us, the sentencing court did not double count. While the court's reference at the second step to factors "as already indicated" was imprecise, and although the court alluded to the commercial nature of the criminal operations at both the first and second

steps, the court assessed the facts relating to those commercial operations for different reasons at each step.

[¶16] At step one, the court discussed the commercial operation in terms of scale, relating to the seriousness of the crime. The fact that Plummer was convicted of trafficking a large amount of heroin and cocaine base was an objective factor properly considered by the court at the first step of its analysis. The court did not use the term "commercial" to explore Plummer's personal motivation for the crime but instead to weigh the nature and gravity of the crime.

[¶17] In contrast, at step two, the court referred to Plummer's "commercial motive" in noting that his actions were not based on an addiction, but rather purely on selfish, monetary gain. The court did not consider again at step two the scale of the operation but rather Plummer's motivations for engaging in criminal activity—a distinct consideration not weighed at step one. While the fact that this was a commercial operation, which, by definition, reflects a pecuniary goal, Plummer's personal motivation was considered exclusively at the second step. There was no double counting.

The entry is:

Judgment affirmed.

Rory A. McNamara, Esq., Drake Law, LLC, Berwick, for appellant Jahneiro Plummer

Aaron M. Frey, Attorney General, and Katie Sibley, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee State of Maine

Kennebec County Unified Criminal Docket docket number CR-2018-1580
FOR CLERK REFERENCE ONLY